UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN INSTITUTE OF PHYSICS, ELSEVIER, INC., WILEY PERIODICALS, INC., and WILEY-LISS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ASIAN BOOKS PRIVATE LIMITED, KIRAN AGARWAL, RAGINI AGARWAL, GERALDINE BUNKER, VANITA BUNKER, DIAMOND & GOLD OUTLET, INC., BUNTY GIDWANI, RESHMA GIDWANI, CHITRA JAGASIA, DILIP JAGASIA, HARISH JAGASIA, KAMAL JAGASIA, RAMESH JAGASIA, SHEELA JAGASIA, and YOGESH JAGASIA, <br><br> Defendants. | Civil Action No. 05cv10178 NMG |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN ORDER PRESERVING EVIDENCE AND PROHIBITING REMOVAL OF ASSETS**

Plaintiffs submit this memorandum in support of their Motion for an Order Preserving Evidence and Prohibiting Removal of Assets, submitted herewith. As will be shown, the proposed Order is needed to protect the integrity of these proceedings, and to ensure that plaintiffs, assuming they prevail in this action, are able to reach the profits that defendants have gained from their unlawful conduct.

**STATEMENT OF FACTS**

In essence, this case involves a widespread and fraudulent scheme for diverting subscription income from plaintiffs. The facts on which this motion is based are set forth in the Affidavits of Marc Brodsky, Roy Kaufman, Mark Seeley and William S. Strong, on file with the Court. The key facts may be summarized as follows:

1. Using false names and addresses, defendants have pretended to be individual subscribers to various journals published by plaintiffs. By doing so they have obtained journal subscriptions at deeply discounted rates that are available only to *bona fide* individual subscribers.

2. The spreadsheets attached to the Affidavits of Marc Brodsky, Roy Kaufman, and Mark Seeley show the large numbers of subscriptions obtained by defendants. These subscriptions cover a wide range of discipline, yet are all addressed to the same names and addresses. Some of the names may perhaps be those of relatives or other real persons in league with defendants, but many of the names, and many of the addresses attached to real names, are clearly fictitious. For example:

- There are numerous subscriptions to plaintiffs' journals in the name of a "Kenny Jay." "Kenny Jay" receives his subscriptions at four different addresses, including three different post office box addresses in Florida, as follows:

| | | | |
|---|---|---|---|
| Asian Case Research Journal | Kenny Jay | PO Box 5940 | Miami, FL 33283 |
| Applied Stochastic Models in Business and Industry | Kenny Jay | PO Box 5940 | Miami, FL 33283 |
| Asian Pacific Journal Management | Kenny Jay | PO Box 5940 | Miami, FL 33283 |

2

| | | | |
|---|---|---|---|
| Molecular Reproduction & Development | Kenny Jay | PO Box 5940 | Miami, FL 33283 |
| Journal of Graph Theory | Kenny Jay | PO Box 5940 | Miami, FL 33283 |
| Chemical Engineering & Technology | Kenny Jay | PO Box 5940 | Miami, FL 33283 |
| Software: Practice and Experience | Harry Jagasia[1] (credit card in the name of Kenny Jay) | 411 Greene Street | Key West, FL 33040 |
| System Dynamics Review | Harry Jagasia (credit card in the name of Kenny Jay) | 411 Greene Street | Key West, FL 33040 |
| Powder Diffraction | Kenny Jay | 14629 SW 104th St Apt 346 PMB | Miami, FL 33186-0000 |
| Journal of Physical Condensed Matter | Kenny Jay | 14629 SW 104th St Apt 346 PMB | Miami, FL 33186-0000 |
| Public Understanding Science | Kenny Jay | 14629 SW 104th St Apt 346 PMB | Miami, FL 33186-0000 |
| Journal of the American College of Cardiology | Kenny Jay | P.O. Box 831327 | Miami, FL 33283 |

- The Florida postal inspector has confirmed that one of the addresses listed above for "Kenny Jay" – 14629 South West 104 St., PMB 346, Miami, FL – is actually leased by In Style International, Inc., an inactive corporation whose principal as last noted in the records of the State of Florida was defendant Ramesh Jagasia.

- In addition, several variations of the "Kenny Jay" name have been used to order yet more subscriptions: e.g., Kenny Jaya, Kene Jay, Ken Jay, Ken Jat, and Ken Jaycea.

---

[1] "Harry Jagasia" is believed to be a pseudonym for defendant Harish Jagasia.

3

- Numerous subscriber names used by defendants share the same addresses. For example, "Kenny Jay" shares P.O. Box 5940, Miami, FL with the following other subscribers: Sharon Jackson, Ken Jacyea, and defendants Bunty Gidwani and Reshma Gidwani.

- The credit cards used for Kenny Jay's subscriptions are also used for subscriptions taken out in at least eleven other names:

  Sharon Jackson,
  Ken Jat c/o Vicky Frandon,
  VJ Enterprises attention Ken Jat,
  Rose [no last name],
  Sheron Sood,
  Victor Mani,
  Reshma Gidwani,
  Romi Jsisism,
  Harry Jagasia,
  Sharon Jay, and
  Kenny Jaya.

- Plaintiffs have confirmed through investigation that other P.O. Boxes and addresses listed in the spreadsheets submitted with the Affidavits filed in this case are linked to Defendants. Affidavit of William S. Strong, ¶ 3.

  2.  There is no possible legitimate purpose for such orders. If defendants had wanted these journals for their own personal edification they would have had no reason to order them in this manner. Their use of false names and addresses shows that they know they are acting wrongfully and do not want plaintiffs to know what they are ordering. The entire scheme is fraudulent on its face.

  3.  Based on past experience with similar scams, plaintiffs believe that at least one purpose of these bogus orders is reselling the subscriptions to institutions at something close to what the publishers themselves would charge the institutions.

4

Defendants thereby pocket the subscription income that should have come to plaintiffs. In the case of Elsevier journals and American Institute of Physics journals, resale of subscriptions is a violation of express contract. Affidavit of Marc Brodsky, ¶ 7, Affidavit of Mark Seeley, ¶ 7. In the case of plaintiff Wiley's journals, it is simple fraud.

4. Some sense of the magnitude of the illicit profit made by defendants is shown on the spreadsheet that is Exhibit A to the Affidavit of Mark Seeley. Defendants can make a profit of thousands of dollars on a single subscription. Affidavit of Mark Seeley, ¶11.

5. Another possible misuse of the subscriptions that defendants have obtained is copyright infringement. At this point plaintiffs strongly suspect that defendants have unlawfully reproduced the journals issues they have obtained and sold them to persons outside the United States, but discovery will be needed to determine if that is so.

6. Defendant Kamal Jagasia, is the managing director of Indian publisher and subscription agent defendant Asian Books Private Ltd. Plaintiffs believe this is the vehicle for reselling Plaintiffs' journals oversees. He and Sheela Jagasia are also the former officers and owners of the now inactive Avi Impex Books and Journals, Inc. Affidavit of William S. Strong, ¶ 4. At least these two defendants are therefore familiar with the intricate details of the publishing industry and thus well-placed to execute this scheme, and may be presumed to be fully aware of the illegality of defendants' conduct. The other Jagasia relatives named as defendants in this case have either placed bogus orders or allowed their names and addresses to be used for bogus orders, and must therefore have known of the fraudulent nature of the orders.

7. Based only upon the information they have to date, Plaintiffs estimate their collective damages from this subscription resale racket to be in the range of $145,000. Affidavit of Brodsky, ¶ 12; Affidavit of Kaufman, ¶ 11; Affidavit Seeley, ¶ 12. Their losses could be much higher, if other fictitious names are also being used. And if an additional purpose of these bogus subscriptions is, as plaintiffs suspect, to obtain copies for illicit reproduction and sale, plaintiffs' losses could be many times that.

8. Plaintiffs have endeavored to determine what assets defendants have that might be available for satisfaction of a judgment in this action. They have determined that Defendants Kamal Jagasia, Sheela Jagasia, Chitra Jagasia, Dilip Jagasia, Harish Jagasia, Ramesh Jagasia, Yogesh Jagasia, and Reshma Gidwani own various businesses in Florida, at least two of which are active jewelry businesses, including defendant Diamond & Gold Outlet, Inc., and thus presumably possess easily portable and valuable property. Specifically, according to the records of the Secretary of State of Florida which plaintiffs will provide upon request of the Court, they are the owners or officers of the following companies:

Diamond & Gold Outlet, Inc.- *active*
411 Greene St
Key West, FL 33040
Sheela, Chitra and Kamal Jagasia

- In Style International Inc. - *inactive*
2100 N.W. 20th St
Miami, FL 33142
Ramesh Jagasia

Italian Jewelers of Key West, Inc. – *active*
304 Front St.
Key West, FL 33040
Dilip and Mamta Jagasia

Jaysons Enterprises Miami, Inc.- *inactive*

6

117 Fitzpatrick St.
Key West, FL 33040
Romi and Yogesh Jagasia

Oxop.com, Inc. - *inactive*
2200 Northwest 102nd Avenue, Unit 2
Miami, FL 33172
Harish Jagasia

Rahddim, Inc. - *inactive*
2200 Northwest 102nd Avenue, Unit 2
Miami, FL 33172
Harish Jagasia, Renu Jagasia, Vivek Jagasia

Regent Opticals, Inc.- *inactive*
2200 Northwest 102nd Avenue, Unit 2
Miami, FL 33172
Harish Jagasia and Vivex Jagasia

Closeout Eyewear, Inc. – *inactive*
7220 N.W. 36th Street, #101
Miami, FL 33166
Harish Jagasia

Jaycee Sales Corporation, Export & Imports - *inactive*
126 Duval Street
Key West, FL 33040
Kamal and Ramesh Jagasia

Jaysons Sai Sales Corporation- *inactive*
424 Greene St
Key West, FL 33040
Ramesh Jagasia

Discount Gold Center, Inc. – *inactive*
134 Duval Street
Key West, FL 33040
Kamal Jagasia

Jagasia Enterprises, Inc. – *inactive*
509 Whitehead St.
Key West, FL 33040
Kamal Jagasia

Avi Impex Books & Journals, Inc.- *inactive*
PO Box 831327

7

    12218 SW 120 St
    Miami, FL 33283
    Kamal Jagasia, Sheela Jagasia, Remesh Jagasia

    Gidwani Enterprises - *inactive*
    1024 17th St.
    Key West, FL 33041
    Reshma Gidwani

    Island Fashions a/k/a Key West Gift Shop - *active*
    115 Fitzpatrick St
    Key West, FL 33040
    Reshma Gidwani

    Raj Kamal Imports, Inc. – *inactive*
    423 Front St
    P.O. Box 1301
    Key West, FL 33041
    Kamal Jagasia

"Inactive" as used above means only that the entity has failed to maintain the currency of its legal filings. The "inactive" entities could still be actively in business.

    9. Defendants also own various real estate in Florida and elsewhere. However, the majority of such real estate is subject to mortgage at a level close to its tax-appraised value. See Affidavit of William S. Strong, ¶ 7. The only unencumbered property of value that plaintiffs have been able to locate belongs to Defendant Ramesh Jagasia at 3701 Pearlman Terrace, Key West, FL 33040, which is why plaintiffs seek an order preventing said defendant from transferring, alienating, mortgaging or otherwise encumbering such property during the pendency of this action in any manner that would remove the proceeds thereof from the United States.

    10. A confidential source has advised plaintiffs' counsel that Kamal Jagasia regularly travels to India and England for business purposes. Affidavit of William S. Strong, ¶ 10. He thus would have ample opportunity to transfer assets overseas. He has

business interests in India, including defendant Asian Books Private Limited. Plaintiffs would have no recourse against defendants if they were to transfer assets to India, as it is not a signatory to any treaty regarding reciprocal enforcement of judgments.

## ARGUMENT

In the First Circuit, a plaintiff must satisfy four criteria to be entitled to an Order of the type they seek here, which is akin to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981). Plaintiffs have met all of those elements and are entitled as a matter of law to the Order they seek.

It bears emphasizing that plaintiffs are seeking procedural safeguards, not preliminary relief on the merits. What plaintiffs fear is that they will suffer irreparable injury if defendants are not prevented from (i) destroying the records relevant to this action and (ii) transferring assets out of the reach of this Court.

I. **PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF THE REQUESTED RELIEF IS NOT GRANTED.**

Plaintiffs are seeking an order preventing defendants from destroying or concealing records related to the fraud at issue in this action. Without defendants' records plaintiffs have no other source to determine (i) the full list of fraudulent names

9

and addresses defendants have used to perpetrate their fraud, (ii) to what customers defendants have resold their subscriptions, (iii) exactly how the various parts of defendants' scheme were carried out, (iv) whether defendants have engaged in unauthorized copying as well as resale of plaintiffs' journals, (v) how much money plaintiffs have lost, and (vi) where the money has gone. Such records are in the sole control of defendants. By definition, the loss plaintiffs will suffer if the records are destroyed is irreparable. *See Giorgi v. Doody*, 537 F.Supp. 1251(D.C.Mass. 1982).

True, the destruction of evidence relevant to a pending case, even without a court order forbidding it, would expose defendants to serious penalties. However, defendants have shown by the conduct that has brought them here in the first place, that they are willing to break the rules. By bringing this motion, plaintiffs wish to underscore that the breaking of the rules will entail serious consequences, including but not limited to the penalties that fall to civil contempt.

Plaintiffs also seek an order preventing defendants from removing their assets from the reach of this court. Plaintiffs seek here, among other things, an accounting of the profits that defendants have diverted to themselves by their fraudulent subscription scheme. The order plaintiffs seek is intended solely to ensure that, at the end of the day, those profits are still within the jurisdiction of the Court. The harm that would result to plaintiffs, were defendants to have surreptitiously removed their assets from the United States by the time of judgment, is by definition irreparable.

## II. THE BALANCE OF HARMS WEIGHS IN FAVOR OF PLAINTIFFS.

Plaintiffs' injury outweighs any harm which granting injunctive relief would inflict on the defendants. Defendants have no right to destroy evidence, thus the proposed Order, as it regards evidence, impairs no right.

To the extent that the proposed Order concerns defendants' assets, plaintiffs submit that they have crafted the order to be as minimally invasive of defendants' legitimate business and personal transactions as possible. They do not seek to interfere with the conduct of legitimate business; they seek only to ensure that defendants do not frustrate the equitable powers of this Court by removing assets from the reach of this Court. Given defendants' demonstrated willingness to commit fraud, such an order is intended only to prevent them from compounding that fraud. To frustrate further fraud cannot be said to interfere with any cognizable interest of defendants.

## III. PLAINTIFFS HAVE ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs submit that the facts of this case, as recited above, demonstrate on their face that defendants have committed common law fraud, misrepresentation, breach of contract, conversion and conspiracy. The facts also state a *prima facie* violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, *et seq*.

In order to state a claim under RICO, plaintiffs must allege: (1) the existence of an enterprise engaged in or affecting interstate or foreign commerce; (2) a pattern of racketeering activity; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) a resulting injury to its business or property. *See Sedima, S.P.R.L. v. Imex Co.*, 473 U.S. 479, 496-98 (1985)(stating elements of RICO violation); *see also*

11

*Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 846 (1st Cir. 1990)(discussing proof necessary to establish violation of RICO).

The term 'enterprise' is defined as including 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.' *U.S. v. Turkette*, 452 U.S. 576, 580 (1981)(quoting 18 U.S.C. §1961(4)). Defendants are clearly an enterprise, a group of individuals associated in fact.

In determining whether the acts alleged are sufficient to support a claim of racketeering activity, the court must consider the following factors: "(1) the number of independent victims; (2) the number of participants; (3) the purpose of the activity; (4) the result of the activity; (5) the method of commission; (6) the number of transactions; (7) whether the scheme is open-ended; and (8) the duration of the activity." *Framingham Union Hospital, Inc. v. Travelers Insurance Co.*, 721 F.Supp. 1478, 1484 (D.Mass. 1989); *see also State Farm Mutual Automobile Insurance Co. v. Rosenfield*, 683 F.Supp. 106, 110 (E.D.Pa. 1988)(discussing requirements of proof for demonstration of pattern of racketeering activity).

Separate acts of racketeering must also reflect "continuity" and "relationship" in order to establish a pattern. "Continuity may be inferred from all of the surrounding circumstances, including the acts themselves or the nature of the enterprise." *Aetna Cas. and Sur. Co. v. Rodco Autobody*, 138 F.R.D. 328, 334 (D. Mass. 1991)(quoting *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989)). In addition, a relationship may be demonstrated through establishment of "the same or similar purposes, results, participants, victims, or methods of commission, or [that the predicate

acts] are interrelated by distinguishing characteristics and are not isolated events." *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445 (1st Cir. 1990)(quoting *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989)).

Defendants' fraudulent subscription orders constitute multiple predicate acts of mail and wire fraud. Clearly they constitute a pattern, as the elaborate scheme using fraudulent names and addresses was perpetrated over the course of several years, involved multiple victims, multiple participants and the predicate acts of fraud were all perpetrated using similar methods.

There is also the necessary nexus here between the pattern of racketeering activity and the enterprise. *State Farm Mutual Automobile Insurance Co. v. Rosenfield*, 683 F.Supp. 106, 110 (E.D.Pa. 1988).

In short, plaintiffs have sufficiently demonstrated a reasonable likelihood of success in establishing that defendants' conduct constitutes a RICO violation just as it does more traditional fraud, misrepresentation, breach of contract, conversion and civil conspiracy.

IV.  **THE PUBLIC INTEREST FAVORS GRANTING THE RELIEF PLAINTIFFS REQUEST**

Defendants cannot invoke any public good that would be served by their destroying evidence or smuggling their assets out from under the eye of this Court. To the extent that the public interest is implicated in this case, it is on the side of plaintiffs. As the affidavits of Marc Brodsky, Roy Kaufman, and Mark Seeley demonstrate, subscription income is critical to the financial well-being of plaintiffs and thus, albeit indirectly, to the pursuit of scholarly publishing. Plaintiff American Institute of Physics,

13

in particular, and all the work that it does on behalf of the country's physicists, is put at risk if people like defendants can siphon off its income with impunity.

## CONCLUSION

Plaintiffs have satisfied all of the required elements for a preliminary injunction and are entitled to the order they seek as a matter of law. They will suffer irreparable injury if defendants are not prevented from destroying key evidence or from moving their assets from the reach of this Court. Such injury outweighs any harm to defendants, as the order requested will have minimal impact on their daily business. Plaintiffs have also shown they are likely to succeed on the merits of their claims and that the public interest weighs in their favor.

For the foregoing reasons, the demands of equity require that plaintiffs be protected by an order prohibiting defendants' transfer of assets and preserving all relevant evidence. Accordingly, plaintiffs ask that the Court enter an order in the form submitted herewith.

Respectfully submitted,

AMERICAN INSTITUTE OF PHYSICS,
ELSEVIER, INC.,
SAGE PUBLICATIONS, INC.,
WILEY PERIODICALS, INC., and
WILEY-LISS, INC.,

Plaintiffs,

By their attorneys,

Dated: February ___, 2005

William S. Strong, Esq., BBO #483520

14

Amy C. Mainelli, Esq., BBO #657201
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)

15